ALLIANCE ENERGY CORPORATION *v.* PLANNING AND ZONING BOARD OF THE CITY OF MILFORD ET AL.
(SC 16770)

Sullivan, C. J., and Borden, Katz, Vertefeuille and Zarella, Js.

Argued October 24, 2002—officially released February 18, 2003

*Paul L. McCullough*, for the appellant (plaintiff).

*Stephen W. Studer*, for the appellee (defendant Stop and Shop Supermarket Company).

*Opinion*

ZARELLA, J. The defendant, Stop and Shop Supermarket Company (Stop & Shop), filed an application with the named defendant, the planning and zoning board of the city of Milford (board), seeking to amend the zoning regulations of the city of Milford (regulations) to allow certain grocery stores possessing a grocery beer permit to sell gasoline. The board approved

Stop & Shop's application and adopted a new regulation proposed by Stop & Shop. Thereafter, the plaintiff, Alliance Energy Corporation (Alliance), filed an administrative appeal in the Superior Court, pursuant to General Statutes (Rev. to 1999) § 8-8,[1] challenging the board's approval of Stop & Shop's application and the adoption of the new regulation. Stop & Shop filed a motion to dismiss Alliance's appeal, claiming that Alliance lacked standing to appeal from the board's action. The trial court granted Stop & Shop's motion and rendered judgment dismissing Alliance's appeal, from which Alliance appealed to the Appellate Court upon

[1] General Statutes (Rev. to 1999) § 8-8 provides in relevant part: "(a) As used in this section:

"(1) 'Aggrieved person' means a person aggrieved by a decision of a board and includes any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board. In the case of a decision by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, 'aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board.

"(2) 'Board' means a municipal zoning commission, planning commission, combined planning and zoning commission, zoning board of appeals or other board or commission the decision of which may be appealed pursuant to this section, or the chief elected official of a municipality, or his designee, in a hearing held pursuant to section 22a-250, whose decision may be appealed.

"(b) Except as provided in subsections (c) and (d) of this section and sections 7-147 and 7-147i, any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. The appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes. The appeal shall be returned to court in the same manner and within the same period of time as prescribed for civil actions brought to that court.

"(c) In those situations where the approval of a planning commission must be inferred because of the failure of the commission to act on an application, any aggrieved person may appeal under this section. The appeal shall be taken within twenty days after the expiration of the period prescribed in section 8-26d for action by the commission. . . ."

the granting of certification.[2] We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The dispositive issue in this appeal is whether the trial court properly concluded that Alliance was not aggrieved by the board's action and, consequently, lacked standing to appeal therefrom. We conclude that the trial court improperly concluded that Alliance was not aggrieved by the board's action. Accordingly, we reverse the judgment of the trial court and remand for further proceedings.

The record discloses the following facts that are relevant to this appeal. Stop & Shop operates a supermarket in the city of Milford. Stop & Shop possesses a permit to sell beer and certain other alcoholic beverages on the premises where its supermarket is located and sought to construct a gasoline station on those premises. Stop & Shop filed an application with the board seeking a change in § 5.4 of the regulations, which prohibited, inter alia, the sale of alcohol on property devoted to the retail sale of gasoline.

The particular provision of the regulations with which Stop & Shop was concerned is § 5.4.5.1, which provides that "[n]o alcoholic liquor shall be sold from the premises of or the site area allocated to any use regulated in this Section." Milford Zoning Regs., § 5.4.5.1. Stop & Shop sought to have the board adopt a new regulation, which would provide: "Section 5.4.5.1 shall not apply to the sale of gasoline by a grocery store, as defined in Connecticut General Statutes [§] 30-20 (c), containing at least 40,000 square feet of gross floor area which sells only beer and other beverages pursuant to a grocery beer permit provided: (i) the premises shall be a

---

[2] See General Statutes (Rev. to 1999) § 8-8 (o) (right to appeal from judgment of Superior Court in administrative appeal contingent on Appellate Court's granting of certification for review).

minimum of five (5) acres and, (ii) the distance between any public entrance to the grocery store and any gasoline pump shall not be less than one hundred fifty feet (150')."

The board held a public hearing on Stop & Shop's application, which was unopposed. Thereafter, the board granted Stop & Shop's application and adopted Stop & Shop's proposed regulation as § 5.4.5.2 of the regulations.

Thereafter, Alliance appealed to the Superior Court pursuant to § 8-8. In its complaint, Alliance alleged that it owned several parcels of real property located within the city of Milford and that it paid taxes to the city. Alliance further alleged that it operated businesses on some of its property and leased the remaining property to business tenants, and that Alliance and its lessees engaged in the retail sale of gasoline and various food and related goods normally sold at convenience stores. Alliance claimed that it was aggrieved by the board's action because the approval of Stop & Shop's application would allow Stop & Shop to operate a gasoline station, which was contrary to § 5.4.5.1 of the regulations, and would result in "adverse traffic and pedestrian impacts, environmental impacts, unfair commercial competition, and unfair and inequitable administration and enforcement of [the] [z]oning [r]egulations." In addition, Alliance alleged that, as a taxpayer, it was automatically aggrieved because the board's action "involve[d] a liquor outlet."

Stop & Shop moved to dismiss Alliance's appeal for lack of jurisdiction, claiming that Alliance lacked standing to appeal pursuant to § 8-8 because it was not aggrieved by the board's action. The trial court granted Stop & Shop's motion and rendered judgment dismissing Alliance's appeal. This appeal followed.

Alliance claims that the trial court improperly concluded that Alliance lacked standing. Specifically, Alliance claims that the trial court improperly concluded that: (1) Alliance, as a taxpayer of the city of Milford, was not automatically aggrieved because the board's decision to grant Stop & Shop's application did not involve the sale of liquor, involve a liquor outlet or affect liquor commerce; (2) Alliance's allegation of unfair commercial competition was insufficient to confer standing; and (3) Alliance did not otherwise identify or possess any specific legal interest sufficient to confer standing. We agree with Alliance's first claim and, consequently, need not consider its other claims.

As a threshold matter, we address our standard of review. We have long held that "because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Lawrence Brunoli, Inc.* v. *Branford*, 247 Conn. 407, 410, 722 A.2d 271 (1999).

We now review the law regarding aggrievement. "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or representative capacity, some real interest in the cause of action . . . . Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all the members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision." (Internal

quotation marks omitted.) *Blumenthal* v. *Barnes*, 261 Conn. 434, 441–42, 804 A.2d 152 (2002).

The crux of Alliance's first claim is that, as a taxpayer of the city of Milford, it automatically satisfies the classical aggrievement test because it contends that the board's decision to grant Stop & Shop's application involves the sale of liquor or a liquor outlet, or affects liquor commerce. The plaintiff's contention that it is classically aggrieved by the board's action is based on our decision in *Jolly, Inc.* v. *Zoning Board of Appeals*, 237 Conn. 184, 196, 676 A.2d 831 (1996), in which we reaffirmed the automatic aggrievement rule, under which "any taxpayer in a municipality has automatic standing to appeal from a zoning decision involving the sale of liquor in that community." Id., 186–87.

In *Jolly, Inc.*, the defendant, Cyrco, Inc., petitioned the zoning board of appeals of the city of Bridgeport for a variance from a city zoning regulation, which required a minimum of 1500 feet between liquor establishments. Id., 188–89. Cyrco, Inc., sought to relocate its existing liquor store to a location that would be within 1430 feet of another liquor store. Id., 189. The variance was approved and the plaintiffs, owners of another liquor store located in the city of Bridgeport, appealed from the board's approval of the variance. Id. "[W]hile acknowledging that the plaintiffs, as taxpayers challenging a zoning decision involving the sale of liquor, had established that they were automatically aggrieved under existing case law, the [trial] court, nevertheless, refused to allow the plaintiffs the benefit of this long-standing rule because it concluded that the reasoning of such prior cases was flawed, anachronistic and should be overruled." Id., 190.

On appeal to this court, the principal issue was "whether [this court] should continue to adhere to [the] long-standing interpretation of 'aggrieved person' in

. . . § 8-8." Id., 185–86. Our long-standing interpretation of the term "aggrieved person," as that term is defined in § 8-8 (a) (1), is that "any taxpayer in a municipality has automatic standing to appeal from a zoning decision involving the sale of liquor in that community." Id., 186–87. In *Jolly, Inc.*, we reversed the judgment of the trial court and reaffirmed the automatic aggrievement rule; id., 196, 203; relying primarily on long-standing precedent, which derived from inherent public policy concerns regarding the societal costs of policing liquor activity in our communities. See id., 197–200.

For example, in *Jolly, Inc.*, we stated: "In *O'Connor v. Board of Zoning Appeals*, [140 Conn. 65, 71–72, 98 A.2d 515 (1953)], we interpreted the aggrievement requirement for zoning appeals relying on the court's reasoning in an earlier decision, *Beard's Appeal*, 64 Conn. 526, 534, 30 A. 775 (1894). Although *Beard's Appeal* involved our interpretation of the term 'aggrievement' as used in a statute dealing with the granting of liquor licenses, in *O'Connor* we concluded that the reasoning in *Beard's Appeal* applied 'with like force and reason to the same word as used in [the zoning appeals statute].' *O'Connor v. Board of Zoning Appeals*, supra, 72. 'In *Beard's Appeal*, [supra, 534] Justice Simeon E. Baldwin [stated]: "[E]very owner of property, assessed in the grand list of the town in which he resides, has a substantial interest in the prosperity and good order of that town. The expense of the local police of any town, as well as of criminal proceedings before its local tribunals, is largely dependent on the number of the liquor saloons and bar rooms within its limits, and the character of those who keep them. If licenses are granted with too free a hand, or without proper discrimination, the burdens of taxation are likely to be increased. Every taxpayer therefore has a certain, though it may be small, pecuniary interest in having the license law well administered; and if he is also a

resident in the town where he pays his taxes, he has an additional interest, common to every citizen, in promoting the general welfare of the community. In view of these considerations, we think that any resident taxpayer[3] of a town who feels aggrieved at the granting of a license for the sale of liquors therein, has the right of appeal . . . and that he is not bound to show any grievance or interest in the matter peculiar to himself . . . .' " *O'Connor* v. *Board of Zoning Appeals*, supra, 71–72.

"Later, in *Tyler* v. *Board of Zoning Appeals*, [145 Conn. 655, 661, 145 A.2d 832 (1958)], another case in which we considered aggrievement in the context of a zoning appeal, we observed: 'The essence of the holdings in *Beard's Appeal* . . . and the cases which have followed it, is that to be an aggrieved person within the meaning of the statute one must show a pecuniary interest injuriously affected by the action of the zoning board of appeals and that such a showing may be sufficiently made, in a case [in which] liquor traffic is involved, by proof that one is a taxpayer in the town, in view of the pecuniary effect upon every taxpayer resulting from the incidents of such traffic. Such a distinction recognizes, again, that in liquor traffic there is a possible source of danger to the public which is not inherent in other businesses and that therefore such traffic warrants distinctive and particular treatment.'

"More recently, we again addressed the policy reasons behind the automatic aggrievement rule. In *Maca-*

---

[3] We note that Alliance did not allege that it is a *resident* taxpayer of the city of Milford; rather, Alliance merely claimed that it is a taxpayer of the city of Milford. We emphasize, however, that the automatic aggrievement rule benefits resident taxpayers and nonresident taxpayers alike. "Originally, we relied upon a plaintiff's status as a taxpayer and as a resident of the municipality in support of the automatic aggrievement rule. Later, however, we clarified that taxpayer status alone is sufficient to establish a presumption of aggrievement." *Jolly, Inc.* v. *Zoning Board of Appeals*, supra, 237 Conn. 194 n.14.

*luso* [v. *Zoning Board of Appeals*, 167 Conn. 596, 600–601, 356 A.2d 885 (1975)], the defendant had 'attacked as anachronistic the policy considerations underlying our longstanding principle that in cases in which traffic in liquor is involved and a statute similar to § 8-8 conferring a right of appeal upon persons aggrieved by decisions of a zoning board of appeals is applicable, a resident taxpayer of a town is a priori an aggrieved person with standing to prosecute the appeal . . . and need not show that he has an interest peculiar to himself. . . . These cases have recognized that the sale and use of liquor may involve such a risk that a resident taxpayer of a town has a sufficient pecuniary interest as well as a sufficient interest in the general well-being of his community to allow him to appeal such decisions.' " (Citation omitted.) *Jolly, Inc.* v. *Zoning Board of Appeals*, supra, 237 Conn. 197–99.

In *Jolly, Inc.*, we also indicated that a zoning board's action can involve the sale of liquor or a liquor outlet even though it does not change the number of liquor outlets. See id., 199–200. "In *O'Connor*, we construed a zoning regulation similar to the 1500 foot regulation at issue in [*Jolly, Inc.*] as a declaration of policy by the town that the location of existing liquor stores has an effect on the general welfare of the community. *O'Connor* v. *Board of Zoning Appeals*, supra, 140 Conn. 70. '[T]he town council took cognizance of the potential danger from this traffic and that the [1500 foot] restriction was enacted as one means of attempting to keep it within bounds. Although under the . . . Liquor Control Act the so-called "old fashioned saloon" of earlier days has been supplanted by the variously designated places of the licensed dispensing permittees for which it provides, the potential menace of the traffic persists. It is a matter of common knowledge that a large percentage of today's serious crimes stems from the excessive use of alcohol and that the hazard to life and limb from

intoxication has been tremendously increased by the advent of present-day automobile traffic. These are material considerations in determining the meaning of the word "aggrieved" as used in [the zoning appeal statute] . . . .' Id., 70–71. We agree with the reasoning in *O'Connor* that Bridgeport has expressed a policy in its 1500 foot rule, namely, that the specific location of liquor stores within city bounds substantially affects the public welfare, regardless of any increase or decrease in the number of liquor stores in the aggregate." *Jolly, Inc.* v. *Zoning Board of Appeals*, supra, 237 Conn. 200.

*Jolly, Inc.*, therefore, stands for the proposition that when an action taken by a zoning board involves the sale or use of liquor or affects traffic in connection with the sale or use of liquor, taxpayers are presumed to be classically aggrieved. See id., 199–200. Specifically, because public policy concerns about the adverse effects of liquor sales and consumption cause municipalities to devote numerous resources to monitor and police those activities, an action of a zoning board that involves the sale or use of liquor or that affects traffic in connection with the sale or use of liquor is presumed to have a negative effect on the pecuniary interest of each taxpayer in the community. A taxpayer claiming aggrievement by such an action, therefore, is presumed to have successfully demonstrated a specific personal and legal interest in the subject matter of the zoning board's action, and such interest is presumed to have been specially and injuriously affected by that action. Thus, a taxpayer claiming such aggrievement automatically satisfies the classical aggrievement test.

In the present case, Stop & Shop successfully sought to have the board add a new regulation to § 5.4 of the regulations. The new regulation removed an existing barrier to the simultaneous sale of gasoline, on the one hand, and "beer and other beverages pursuant to a grocery beer permit"; Milford Zoning Regs., § 5.4.5.2;

on the other, provided the criteria in the new regulation are satisfied. The board's adoption of the new regulation has the potential to increase the number of liquor outlets throughout the city of Milford. For example, prior to the board's adoption of the new regulation, any business engaged in the retail sale of gasoline in the city of Milford was strictly prohibited from selling liquor on the premises on which it sells gasoline. See Milford Zoning Regs., § 5.4.5.1. Under the new regulation, however, any grocery store possessing a grocery beer permit, containing at least 40,000 square feet of gross floor area and situated on at least five acres of land may sell gasoline *and* certain liquor as long as the distance between any public entrance to the grocery store and any gasoline pump is not less than 150 feet.[4] See Milford Zoning Regs., § 5.4.5.2. The removal of the prohibition, therefore, involves liquor within the meaning of the automatic aggrievement rule that we followed in *Jolly, Inc.*, and its long list of predecessors. See *Macaluso* v. *Zoning Board of Appeals*, supra, 167 Conn. 597–98, 600–601 (zoning board's action allowing defendant to maintain package store on subject premises involved

---

[4] Stop & Shop claims that the board's adoption of the new regulation involves the sale of gasoline rather than the sale of liquor inasmuch as the board's action does not result in "the [granting] of a new liquor permit or the relocation of an existing liquor [outlet], but rather the modification and relaxation of the [r]egulations governing the sale of gasoline." It is true that some grocery stores, such as Stop & Shop, which already are engaged in the sale of certain liquors pursuant to a grocery beer permit, will rely on the new regulation to engage in the retail sale of gasoline. Under those circumstances, the board's action can be viewed as one affecting the sale of gasoline. Stop & Shop fails to appreciate the scope of the board's new regulation, however. Under the new regulation, a convenience store engaged in the retail sale of gasoline but not in the sale of liquor pursuant to a grocery beer permit conceivably could purchase adjoining land and expand its premises to fall within the criteria enumerated in the regulation (e.g., 40,000 square feet of gross floor area situated on five acres of land), successfully apply for the issuance of a grocery beer permit and simultaneously sell gasoline and certain liquors pursuant to a grocery beer permit. Consequently, the board's adoption of the new regulation involves the sale of liquor within the meaning of the automatic aggrievement rule.

liquor when continued sale of liquor at that location constituted nonconforming use under existing zoning regulations); *Dolan* v. *Zoning Board of Appeals*, 156 Conn. 426, 428, 242 A.2d 713 (1968) (zoning board's decision to grant variance from zoning regulations, which constituted precondition to obtaining liquor permit, involved sale of liquor); *M. & R. Enterprises, Inc.* v. *Zoning Board of Appeals*, 155 Conn. 280, 281–82, 231 A.2d 272 (1967) (same); *Cowles* v. *Zoning Board of Appeals*, 153 Conn. 116, 117, 214 A.2d 361 (1965) (same); *Zuckerman* v. *Board of Zoning Appeals*, 144 Conn. 160, 162–64, 128 A.2d 325 (1956) (taxpayer automatically aggrieved by planning and zoning board's zone change and approval of certain parcel as site for package store); *O'Connor* v. *Board of Zoning Appeals*, supra, 140 Conn. 70–72 (planning board's decision to grant waiver of zoning ordinance requiring distance of at least 1000 feet between establishments engaged in sale of alcoholic beverages involved liquor and, thus, conferred automatic standing on plaintiff taxpayers); cf. *London* v. *Planning & Zoning Commission*, 149 Conn. 282, 284, 179 A.2d 614 (1962) (planning and zoning commission's granting of defendant's request for zone change did not involve liquor when sale of liquor was prohibited on portion of defendant's property for which zone change was requested, even though defendant was not prohibited from prospectively seeking liquor permit to sell liquor on adjoining property that was not affected by zone change and on which the sale of liquor was not prohibited).[5]

We conclude, therefore, that Alliance, as a nonresident taxpayer, has alleged facts sufficient to establish

---

[5] We note that many of the predecessors to *Jolly, Inc.*, that we cite in this opinion involved variances to existing zoning regulations and that the board in the present case did not grant a variance, but, rather, adopted a new zoning regulation of general applicability. The line of cases preceding and leading up to *Jolly, Inc.*, is instructive, however, because those cases concerned the type of decisions that we have regarded as involving liquor.

that it is aggrieved by the board's decision to approve Stop & Shop's application and to adopt § 5.4.5.2 of the regulations because that decision involves the sale of liquor. See, e.g., *Jolly, Inc.* v. *Zoning Board of Appeals*, supra, 237 Conn. 186–87. The trial court, therefore, improperly dismissed Alliance's appeal.

The judgment is reversed and the case is remanded with direction to deny Stop & Shop's motion to dismiss and for further proceedings according to law.

In this opinion the other justices concurred.