# EDGEWOOD VILLAGE, INC., ET AL. *v.* HOUSING AUTHORITY OF THE CITY OF NEW HAVEN
## (SC 16926)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued May 21—officially released August 5, 2003

*Thomas E. Crosby,* for the appellants (plaintiffs).

*Marisa A. Bellair,* for the appellee (defendant).

*Shelley A. White,* for the appellee (intervening defendant).

*Opinion*

KATZ, J. The dispositive issue in this appeal[1] is whether the plaintiffs, Edgewood Village, Inc., and Edgewood Neighborhood Association, Inc., are aggrieved, and therefore have standing, to challenge the actions of the defendant, the housing authority of the city of New Haven (housing authority), pertaining to its acquisition of certain property for use as scattered site public housing pursuant to its authority under General Statutes (Rev. to 1997) § 8-44.[2] The plaintiffs appeal

---

[1] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes (Rev. to 1997) § 8-44 provides in relevant part: "An authority shall constitute a public body corporate and politic, exercising public powers and having all the powers necessary or convenient to carry out the purposes and provisions of this chapter, including the following enumerated powers in addition to others granted by any provision of the general statutes . . . (d) to . . . purchase, lease, obtain options upon or acquire, by gift, grant, bequest, devise or otherwise, any real or personal

from the judgment of the trial court dismissing their action against the housing authority and the intervening defendant, Gracie White, a tenant of the housing authority, due to lack of subject matter jurisdiction. The plaintiffs claim that the trial court improperly determined that they were not aggrieved by the housing authority's defective notice of a public hearing prior to its acquisition of the subject property. We affirm the judgment of the trial court.

The record reveals the following facts and procedural history. In 1991, several individuals brought an action against the housing authority and the United States Department of Housing and Urban Development alleging that they had violated federal housing law by failing to provide scattered site housing[3] in New Haven to

property or any interest therein, provided no real property or interest therein shall be acquired for the site of a proposed housing project until the housing authority has held a public hearing concerning such site, notice of which has been published in the form of a legal advertisement in a newspaper having a substantial circulation in the municipality at least twice at intervals of not less than two days, the first not more than fifteen nor less than ten days, and the last not less than two days, before such hearing . . . ."

Section 8-44 has been amended several times since 1997, the time of the relevant proceedings here; none of those changes affected substantive law with respect to the issue in the present case. All references herein are to the 1997 statute.

[3] Scattered site housing differs from traditional public housing in that there is no construction of large multiunit "project" style buildings. Instead, "scattered-site housing is affordable housing dispersed throughout a geographic area. This type of single-family housing typically blends in with the surroundings; it looks like any other house on a given block." J. Cummins, "Recasting Fair Share: Toward Effective Housing Law and Principled Social Policy," 14 Law & Ineq. 339, 385 n.241 (1996). Individual residences are acquired or built by the authority within existing neighborhoods, and the tenants are "scattered" within those neighborhoods. The rationale behind this form of public housing is to "improve opportunities for low-income families to become both economically and racially integrated into mainstream society." R. Sander, "Individual Rights and Demographic Realities: The Problem of Fair Housing," 82 Nw. U. L. Rev. 874, 932 (1988). Indeed, courts have used scattered site housing to remedy the historical racial segregation that traditional housing projects have continued to propagate. See *Gautreaux* v. *Chicago Housing Authority*, 304 F. Sup. 736, 737–43 (N.D. Ill. 1969) (ordering defendant to remedy historical segregation in public

replace a demolished multiunit public housing project. See *Christian Community Action, Inc.* v. *Cisneros,* United States District Court, Docket No. 3:91CV00296 (AVC) (D. Conn. May 11, 1995). In 1995, the parties settled the case. Under the settlement agreement, the housing authority was required to provide scattered site units outside minority concentration areas.

Pursuant to the agreement, the housing authority identified, as a potential site, a single unit property located at 145 West Park Avenue (property) in the Edgewood neighborhood[4] of New Haven. Thereafter, on March 1 and March 8, 1997, the housing authority published in the New Haven Register a legal notice, stating its intention to acquire the property and announcing a public hearing for March 11, 1997.[5] After the hearing, the authority acquired the property, and subsequently placed White as a tenant on the premises.

In a complaint dated July 14, 1997, the plaintiffs brought an action seeking both temporary and permanent injunctions barring the housing authority from leasing, transferring or otherwise using the property for residential purposes. The plaintiffs alleged that Edgewood Village, Inc., is a nonprofit corporation that owns real property located at 139 West Park Avenue and

housing by establishing certain percentage of public housing in predominately white areas).

[4] According to the plaintiffs' complaint, the Edgewood neighborhood is the area bounded by West Park Avenue, Whalley Avenue, Winthrop Avenue and Chapel Street in New Haven.

[5] The notice dated March 1, 1997, provided in relevant part: "Notice is given, pursuant to [General Statutes §] 8-44, that the Board of Commissioners of the Housing Authority of the City of New Haven (the Authority) will hold a public hearing at 5:30 PM on Tuesday, March 11, 1997 at Katherine Brennan School, 200 Wilmot Rd., New Haven, CT to receive public comment on the potential acquisition by the Authority of an existing 1-unit property at 145 West Park Ave.; and an existing 1-unit property at 63 Fulton St. (which is proposed to be demolished, and the land combined with adjacent property already owned by the Authority for a new construction development).

"Authority staff and supplemental materials are available . . . ."

that Edgewood Neighborhood Association, Inc., is an organization established "for the purposes of . . . preserving and advancing the common good of residents and owners of property in the Edgewood neighborhood . . . ." The plaintiffs further alleged that the housing authority had failed, in violation of § 8-44, to give proper notice of the hearing with regard to its acquisition of the property for use as a scattered site housing project. On July 16, 1997, the trial court, *W. Sullivan, J.*, granted the temporary injunction, pending further order of the court.

On August 20, 1997, the housing authority filed a motion to dismiss the action, claiming that the court lacked both subject matter and personal jurisdiction. Specifically, the housing authority maintained that the court lacked subject matter jurisdiction because the plaintiffs did not have standing, and the court lacked personal jurisdiction because the plaintiffs had failed to include a return date on the summons, rendering it defective. In its memorandum of decision issued October 27, 1997, the court determined that it had subject matter jurisdiction over the claim, concluding that the plaintiffs were classically aggrieved. The court granted the motion to dismiss for lack of personal jurisdiction, however, on grounds that the plaintiffs' purported summons was defective and that the plaintiffs had failed to file a writ of summons, as required by statute. See General Statutes § 52-45a.

On October 29, 1997, the plaintiffs commenced the present action against the housing authority. In their complaint, the plaintiffs alleged, inter alia, that the housing authority had failed: (1) to give timely and proper notice of the hearing in violation of § 8-44; (2) to provide adequate supervision to ensure that the scattered housing units properly would be maintained, thereby adversely affecting the plaintiffs' property values; and (3) to follow its internal guidelines with respect to scat-

tered site housing. The plaintiffs sought both temporary and permanent injunctions barring the housing authority from leasing, transferring or otherwise using the premises for residential purposes. Thereafter, the housing authority removed the action to the United States District Court for the District of Connecticut. The plaintiffs then filed a motion in the District Court to remand the case back to the state Superior Court, which the court, Squatrito, J., granted. *Edgewood Village, Inc.* v. *Housing Authority*, United States District Court, Docket No. 3:972371 (DJS) (September 29, 1998).

On remand to state court, White filed a motion to be made a party defendant pursuant to General Statutes § 52-102 and Practice Book § 99, which the court, *Pittman, J.*, granted. On March 28, 2000, White filed a motion to dismiss the plaintiffs' complaint for lack of subject matter jurisdiction due to lack of standing. The trial court, *Thompson, J.*, granted the motion in part with respect to the plaintiffs' claim regarding the housing authority's failure to follow its guidelines, but denied the motion with respect to the housing authority's alleged failure to comply with the notice provisions of § 8-44.[6]

On July 26, 2000, the defendants filed a joint motion for summary judgment, claiming that the notice was legally sufficient. The trial court, *Munro, J.*, denied the motion, concluding that the first notice of March 1, 1997, was inadequate under the requirements of § 8-44, in that it was published less than ten days before the hearing. See footnote 2 of this opinion. Thereafter, the plaintiffs filed a motion for summary judgment, claiming that there was no issue of material fact as to the authority's failure to comply with the notice provisions

[6] The court did not address the plaintiffs' standing with respect to their claim of the housing authority's inadequate supervision of the property and the resulting potential effect on the plaintiffs' property values.

of § 8-44. On August 15, 2001, the plaintiffs filed a second amended complaint, further alleging that the authority's defective notice deprived them of due process by precluding them from attending the hearing and commenting on the proposed acquisition. The plaintiffs also amended the relief sought, asking the court to void the housing authority's acquisition of the property and to order that the authority dispose of the property to Edgewood Village, Inc.

In a memorandum of decision on the plaintiffs' motion for summary judgment, the trial court, *Robinson, J.*, indicated that its review of the file, in light of the injunctive relief sought in the amended complaint, raised concerns that the plaintiffs lacked standing to obtain the relief sought.[7] After determining that the plaintiffs were not statutorily aggrieved, the court then pondered whether the plaintiffs were classically aggrieved. Specifically, the court noted that "[t]he issues raised by the plaintiffs in their second amended complaint concerning the opportunity to attend the public hearing and comment on the subject matter of the hearing go to the concerns of the general community at large and do not appear to demonstrate that the plaintiffs were affected . . . in a specific and personal manner. . . . [Moreover] [t]he fact that the subject matter of the notice dealt with a property that is in close proximity of the plaintiffs' real property also does not give the plaintiffs standing." The court further noted that the relief requested raised questions about the plaintiffs' standing because they requested disposal of the property to Edgewood Village, Inc., and not a declaratory judgment as to whether the hearing properly had been held. Therefore, the court ordered the parties to submit simultaneous memoranda of law on the issue

---

[7] Judge Robinson noted in his memorandum of decision that the plaintiffs had clarified during oral argument that, despite requesting an "order declaring" certain relief in their complaint, they were not seeking declaratory relief.

of subject matter jurisdiction, and denied the plaintiffs' motion for summary judgment without prejudice. In a memorandum of decision dated April 23, 2002, the court concluded, for the reasons it previously had expressed, that the plaintiffs did not have standing and, accordingly, that the court did not have subject matter jurisdiction over the plaintiffs' claims. Therefore, the trial court rendered judgment dismissing the action. This appeal followed.

The plaintiffs contend that the trial court improperly determined that they were not aggrieved. Specifically, they contend that they were denied due process because the housing authority's failure to provide timely and specific notice of its intention to acquire the property for scattered site housing, as the plaintiffs contend is required by § 8-44, deprived them of the opportunity to participate in the hearing.[8] The plaintiffs claim that this lack of notice precluded them from expressing their concerns about the effect of the housing authority's acquisition and use of the property on their safety and property values, an interest that they allege is distinct from concerns held by the general public. They further contend that, because the notice was defective, the housing authority acquired the property illegally. We disagree.

We first set forth the standard of review and legal principles that guide our analysis. "We have long held

---

[8] The plaintiffs also claim that Judge Robinson improperly: (1) dismissed the action for lack of standing, in light of Judge Munro's prior determination that the notice was defective under § 8-44; and (2) raised the issue of subject matter jurisdiction, sua sponte, in light of Judge Thompson's prior determination that the plaintiffs had standing to pursue their claims. Because we conclude that the lack of adequate notice resulting in the plaintiffs' inability to express their views at the hearing does not provide a basis for standing, we reject the first claim. With respect to the plaintiffs' second claim, we note that, because standing raises an issue of subject matter jurisdiction that the court must address even when the parties stipulate to the court's jurisdiction; see *Rayhall* v. *Akim Co.*, 263 Conn. 328, 337, 819 A.2d 803 (2003); Judge Robinson properly considered the issue.

that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *In re Shawn S.*, 262 Conn. 155, 164, 810 A.2d 799 (2002). "In order for a party to have standing to invoke the jurisdiction of the court, that party must be aggrieved. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or representative capacity, some real interest in the cause of action . . . . Standing is established by showing that the party claiming it is authorized by statute to bring suit [in other words, statutorily aggrieved] or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all the members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision." (Internal quotation marks omitted.) Id., 164–65.

Although they are not claiming statutory aggrievement, the gravamen of the plaintiffs' claims nevertheless rests on their contention that they are classically aggrieved by the housing authority's failure to comply with the notice provisions of § 8-44. Therefore, we consider the purpose of the hearing requirement, as reflected in the language and legislative history of § 8-44, to determine whether the plaintiffs, as neighboring property owners, have a specific personal and legal interest in attending the hearing.

The relevant portion of the statute provides that the housing authority may, inter alia, "purchase, lease,

obtain options upon or acquire, by gift, grant, bequest, devise or otherwise, any real or personal property or any interest therein, *provided no real property or interest therein shall be acquired for the site of a proposed housing project until the housing authority has held a public hearing concerning such site, notice of which has been published in the form of a legal advertisement in a newspaper having a substantial circulation in the municipality at least twice at intervals of not less than two days, the first not more than fifteen nor less than ten days, and the last not less than two days, before such hearing . . . .*" (Emphasis added.) General Statutes (Rev. to 1997) § 8-44 (d). We first note that there is nothing in § 8-44 or the public housing statutory scheme generally; see General Statutes § 8-38 et seq.; creating a cause of action against the housing authority or a right of appeal should the housing authority fail to comply with the hearing requirement. We further note that, although the statute provides for a public hearing, it places no requirements or limitations on the actions the housing authority may take as a result of comments it receives at the hearing, irrespective of the nature and degree of opposition from hearing participants. Accordingly, under § 8-44, the legislature has vested discretion solely in the housing authority to make decisions regarding the location of public housing projects, whether to purchase or lease property it deems suitable and whom it shall place in property it acquires. Indeed, subsequent to the hearing, the housing authority may make its decision unaffected by the will of the community, just as any other private individual may in deciding whether to purchase a home or to whom to sell his home.

It is noteworthy that the legislative history of § 8-44 reflects that the legislature recognized the importance of providing a forum for the community to express its views. See Conn. Joint Standing Committee Hearings,

Judiciary and Governmental Functions, Pt. 2, 1957 Sess., p. 533, remarks of Senator Theodore Lynch.[9] That history also expresses the legislature's hope that the housing authority would take those views into account when deciding whether to go forward with a housing project. See id., remarks of Senator Lynch[10] and remarks of Representative Mary Fahey;[11] 7 H.R. Proc., Pt. 6, 1957 Sess., p. 3368, remarks of Representative Maurice Gersten.[12] In view, however, of the comments made during the legislative debates and the legislature's decision not to impose any restrictions on the housing authority's exercise of its authority pursuant to § 8-44, we can infer that the legislature's primary purpose in prescribing the hearing was to ensure that the *housing authority* had the ability to make informed decisions in determining appropriate public housing sites.

Our reasoning is further informed by reference, and *in contrast,* to the comprehensive remedial and procedural scheme set forth in the zoning statutes; General

---

[9] Senator Lynch stated: "This bill calls for public hearings before the development commissions can change the geography of existing neighborhoods. We have found that people who have been established in a certain neighborhood have found there is a redevelopment going on which they knew nothing about before. They made an appeal to the commission and got nowhere. . . . This bill will require the redevelopment commission to have a public hearing before they take property, condemn it and convert it into a housing project." Conn. Joint Standing Committee Hearings, supra, p. 533.

[10] In response to a question posed about what happens after the hearing, Senator Lynch stated: "I think in my experience it calls for [a hearing]. If the people come in [the housing authority] will listen to them." Conn. Joint Standing Committee Hearings, supra, p. 533.

[11] Representative Fahey stated: "I feel it [is] only the right of the people to have a public hearing. An aroused public opinion will be strength enough." Conn. Joint Standing Committee Hearings, supra, p. 533.

[12] Representative Gersten stated: "[T]he second provision [of the bill] would take care of public hearings on moderate rental housing projects after advertising the [same] specifically, and the ads would have to take into consideration the character of the neighborhood and the areas to be considered before it could be established." 7 H.R. Proc., supra, p. 3368.

Statues § 8-1 et seq.; and our case law recognizing classical aggrievement arising from that scheme. See *Gladysz* v. *Planning & Zoning Commission*, 256 Conn. 249, 257, 773 A.2d 300 (2001) ("[T]he standard for determining whether a party has standing to apply [for a permit] in a zoning matter is less stringent. A party need have only a sufficient interest in the property to have standing to apply in zoning matters."). Like the chapter of our General Statutes governing public housing, the zoning scheme contains a provision requiring a public hearing. Compare General Statutes § 8-44 with General Statutes § 8-3 (a).[13] Unlike the public housing scheme, however, the zoning scheme provides for statutory aggrievement. See General Statutes § 8-8 (a) (1)[14] (providing standing

---

[13] General Statutes § 8-3 (a) provides: "Such zoning commission shall provide for the manner in which regulations under section 8-2 or 8-2j and the boundaries of zoning districts shall be respectively established or changed. No such regulation or boundary shall become effective or be established or changed until after a public hearing in relation thereto, held by a majority of the members of the zoning commission or a committee thereof appointed for that purpose consisting of at least five members, at which parties in interest and citizens shall have an opportunity to be heard. Notice of the time and place of such hearing shall be published in the form of a legal advertisement appearing in a newspaper having a substantial circulation in such municipality at least twice at intervals of not less than two days, the first not more than fifteen days nor less than ten days, and the last not less than two days, before such hearing, and a copy of such proposed regulation or boundary shall be filed in the office of the town, city or borough clerk, as the case may be, in such municipality, but, in the case of a district, in the offices of both the district clerk and the town clerk of the town in which such district is located, for public inspection at least ten days before such hearing, and may be published in full in such paper. In addition to such notice, such zoning commission may, by regulation, provide for notice by mail to persons who are owners of land which is included in or adjacent to the land which is the subject of the hearing. The commission may require a filing fee to be deposited with the commission to defray the cost of publication of the notice required for a hearing."

[14] General Statues § 8-8 (a) (1) provides: " 'Aggrieved person' means a person aggrieved by a decision of a board and includes any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board. In the case of a decision by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, 'aggrieved person' includes any

for "any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the [zoning] board"). Indeed, the zoning commission may be required to provide notice specifically to those owners whose land is included in or adjacent to the land which is the subject of the hearing. General Statutes § 8-3 (a). More importantly, the zoning scheme provides for a right of appeal. See General Statutes § 8-8 (b).[15] The zoning scheme, therefore, in contrast to the public housing scheme, reflects a constellation of statutory rights from which other legal rights may arise. In view of this comprehensive remedial scheme, we have recognized specific personal legal rights arising from violations of the zoning provisions that establish classical aggrievement. See, e.g., *Alliance Energy Corp.* v. *Planning & Zoning Board*, 262 Conn. 393, 404–405, 815 A.2d 105 (2003) (noting long-standing common-law rule finding taxpayers within municipality "automatically" and, therefore, classically aggrieved when zoning decision involves sale of liquor); *Harris* v. *Zoning Commission*, 259 Conn. 402, 414, 788 A.2d 1239 (2002) (practical impact of zoning amendment on property owners sufficient to satisfy first prong of classical aggrievement test of personal legal interest despite application of amendment to residents generally); *Bright* v. *Zoning Board of Appeals*, 149 Conn. 698, 704, 183 A.2d 603 (1962) (property owners beyond scope of statutory aggrievement established specific, personal interest in zoning variance granted to neighboring golf club).

person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."

[15] General Statutes § 8-8 (b) provides in relevant part: "Except as provided in subsections (c), (d) and (r) of this section and sections 7-147 and 7-147i, any person aggrieved by any decision of a board, including a decision to approve or deny a site plan pursuant to subsection (g) of section 8-3, may take an appeal to the superior court for the judicial district in which the municipality is located. . . ."

By contrast, in the present case, the plaintiffs have not demonstrated that their interest in attending the hearing is a specific and legal interest. Although the plaintiffs reside next to or near the property at issue, the housing scheme does not reflect concerns that mere proximity to public housing would bestow a specific and legal interest due to the defective notice. See *Vose* v. *Planning & Zoning Commission*, 171 Conn. 480, 484, 370 A.2d 1026 (1976) (abutting landowner not automatically classically aggrieved); R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 32.5, p. 111. Indeed, consistent with the statutory requirement to provide general notice to the community, the defective notice not only affected the plaintiffs, but also every other resident of New Haven, who, for whatever reason, wished to be heard on the issue of scattered site public housing at 145 West Park Avenue. The defective notice, therefore, as it affected the plaintiffs, cannot be "distinguished from [the] general interest, such as is the concern of all the members of the community as a whole." *In re Shawn S.*, supra, 262 Conn. 165. Accordingly, the plaintiffs have not demonstrated that they had a specific personal and legal interest in attending the hearing.

For similar reasons, the plaintiffs' contention that the housing authority's actions in acquiring the property were illegal and void, due to its failure to give proper notice of the hearing, is unfounded. We have recognized, in zoning related matters, that an agency's failure to follow the statutory hearing requirement constitutes a jurisdictional defect that invalidates the agency's actions. See, e.g., *Akin* v. *Norwalk*, 163 Conn. 68, 74, 301 A.2d 258 (1972) (town common council's failure to follow notice procedure rendered subdivision approval null and void); *Slagle* v. *Zoning Board of Appeals*, 144 Conn. 690, 693, 137 A.2d 542 (1957) (appeal from granting of variance sustained due to zoning board of appeals'

failure to comply with notice time requirements).
Accordingly, we have explained that the right to chal-
lenge the validity of the agency's action due to an inade-
quate hearing notice is based, in part, on the fact that the
notice is a necessary predicate to exercising a statutory
right to appeal. See *Bridgeport Bowl-O-Rama, Inc.* v.
*Zoning Board of Appeals*, 195 Conn. 276, 281, 487 A.2d
559 (1985) (" '[t]he right of appeal, if it is to have any
value, must necessarily contemplate that the person
who is to exercise the right be given the opportunity
of knowing that there is a decision to appeal from and
of forming an opinion as to whether that decision pre-
sents an appealable issue' "); *Akin* v. *Norwalk*, supra,
73 ("[t]he obvious purpose of [General Statutes §] 8-
28, requiring the publication in a newspaper of the deci-
sion of a [planning] commission, is twofold: (1) To give
notice to interested parties of the decision, and (2) to
commence the start of the fifteen-day appeal period").
As we previously noted, although the zoning scheme
contains a statutory right of appeal; see footnote 15 of
this opinion; there is no right of appeal under the public
housing scheme.

The plaintiffs' allegation of declining property values
as a basis for aggrievement is similarly without merit.[16]
Again, in the context of zoning, we have recognized
that diminution of property value may establish
aggrievement. Compare *Hyatt* v. *Zoning Board of
Appeals*, 163 Conn. 379, 381, 311 A.2d 77 (1972)
(aggrievement established) and *Berlani* v. *Zoning
Board of Appeals*, 160 Conn. 166, 168–69, 276 A.2d 780
(1970) (same) with *Sachem's Head Assn.* v. *Lufkin*, 168
Conn. 365, 368, 362 A.2d 519 (1975) (no aggrievement
because diminution of value claim too speculative). As

---

[16] We note that the trial court did not address the issue of alleged declining
property values in its opinion, even though the plaintiffs pleaded it in their
second amended complaint. The plaintiffs did not file a motion to articulate
to compel the trial court to address this issue.

we previously explained, the comprehensive remedial statutory scheme for zoning gives rise to other legal rights that we do not otherwise recognize in the absence of such a statutory nexus or a compelling policy reason. See *Alliance Energy Corp.* v. *Planning & Zoning Board*, supra, 262 Conn. 399–403 (affirming presumption of classical aggrievement in cases related to zoning board actions involving sale or use of liquor or that affect traffic in connection with such sale or use in light of public policy concerns). Indeed, although we have recognized, outside the context of zoning, that an agency's decision resulting in a diminution of value in a property interest may establish aggrievement, the plaintiff first was required to demonstrate that he or she had a specific legal interest in the subject matter of the decision. Compare *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care*, 226 Conn. 105, 122–27, 627 A.2d 1257 (1993) (statutory scheme does not give rise to legal interest allowing plaintiff hospitals to challenge defendant commission's decision to grant defendant hospitals' application for certificate of need for construction of rehabilitation hospital on ground of dilution and diminution in value of each certificate of need for similar service) with *Light Rigging Co.* v. *Dept. of Public Utility Control*, 219 Conn. 168, 176–77, 592 A.2d 386 (1991) (statutory scheme gives rise to specific personal and legal interest allowing plaintiff motor carriers to challenge defendant department's decision granting to competitor certificate to operate business for which no public need exists based on allegation of resulting diminution in value of plaintiffs' certificates). It is clear, however, that the public housing scheme does not give rise to a specific legal interest to permit neighboring property owners to contest a decision by the housing authority to acquire property on the basis of an allegation that a decline in property value potentially will result.

In essence, the plaintiffs are attempting to undo a real estate transaction because they believe that the persons who will reside there may cause the surrounding property values to decline. Endorsing such a rule, however, would prevent property owners from freely selling their land to anyone they choose, based merely upon complaints by members of the neighborhood that the buyers potentially would cause their property values to decline. We decline to adopt such a rule, as it would violate our strong public policy against restraints on the alienation of property. See *Gangemi* v. *Zoning Board of Appeals*, 255 Conn. 143, 151, 763 A.2d 1011 (2001) (holding that "no rental" zoning provision violated public policy against restraints on alienation). Moreover, such a view would continue to perpetuate the "not-in-my-backyard" response that is so often recited in reaction to scattered site placements. See J. Seliga, "*Gautreaux* a Generation Later: Remedying the Second Ghetto or Creating the Third?" 94 Nw. U. L. Rev. 1049, 1061 n.66 (2000) (neighborhood responses to scattered site public housing akin to proposals to situate prisons and dumps in neighborhoods). Therefore, the plaintiffs have not met the first prong of the classical aggrievement test and, accordingly, lack standing to pursue their claim.[17]

The plaintiffs, however, cite several cases they claim support their contention that they have a specific and legal interest and are therefore aggrieved: *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 569, 775 A.2d 284 (2001); *Timber Trails Corp.* v. *Planning & Zoning Commission*, 222 Conn. 374, 378, 610 A.2d 617 (1992); *Hart Twin Volvo Corp.* v. *Commissioner of Motor Vehicles*, 165 Conn. 42, 45–47, 327 A.2d 588 (1973); *Hartford Electric Light Co.* v. *Water Resources*

---

[17] Because we conclude that the plaintiffs have not met the first prong of the classical aggrievement test, we need not decide whether they have satisfied the second prong.

*Commission*, 162 Conn. 89, 110–12, 291 A.2d 721 (1971). These cases are inapposite. *Timber Trails Corp.* involved our zoning laws, which, as we previously explained herein, provide a comprehensive remedial scheme that gives rise to specific legal rights. In that case, we held that the defendants' failure to comply with the notice provisions of § 8-3 when changing zone boundaries rendered those changes invalid. *Timber Trails Corp.* v. *Planning & Zoning Commission*, supra, 378. A change of zone necessarily alters one of the bundles of rights possessed by a landowner—the use of the property—such that a legal interest is affected. In *AvalonBay Communities, Inc.*, the defendant town attempted to block the plaintiff landowners' construction of affordable housing by asserting eminent domain to acquire the plaintiffs' land and construct on it a hastily planned industrial park. *AvalonBay Communities, Inc.* v. *Orange*, supra, 561–62. That case is clearly distinguishable from the present case. First, in *AvalonBay Communities, Inc.*, the plaintiffs' own property was directly at issue in the challenged proceedings. Second, we concluded therein that the plaintiffs had standing based in part on our recognition that their interest was in furtherance of the purpose underlying the statutory scheme governing municipal development projects. Id., 569.

The latter two cases cited by the plaintiffs involved challenges to defective notice when the administrative action resulted directly in the deprivation of existing property rights, unlike the present case. This court's decision in *Hart Twin Volvo Corp.* involved the suspension of a new car dealer's license to sell motor vehicles, and we held that a suspension proceeding required proper notice and a hearing because it concerned a property interest, namely, the right to earn a livelihood by selling cars. *Hart Twin Volvo Corp.* v. *Commissioner of Motor Vehicles*, supra, 165 Conn. 46. Likewise, *Hart-*

*ford Electric Light Co.* involved defective notice in a hearing concerning power lines, where the notice failed to inform the plaintiff that its application to span two new lines across the Connecticut River would be granted on the condition that it remove one of its existing lines that already spanned the river. *Hartford Electric Light Co.* v. *Water Resources Commission,* supra, 162 Conn. 111–12. In the present case, the housing authority's defective notice has not deprived the plaintiffs of any use or enjoyment of their own property, nor has it deprived them of any other preexisting property right. Indeed, the plaintiffs merely were precluded from being able to voice their opinion about a matter in which they had no legal right to affect the outcome.

The judgment is affirmed.

In this opinion PALMER, VERTEFEUILLE and ZARELLA, Js., concurred.

BORDEN, J., concurring. I agree that, under the circumstances of this case, the plaintiffs, Edgewood Village, Inc., and Edgewood Neighborhood Association, Inc., have no standing to challenge the actions of the defendant housing authority of the city of New Haven in purchasing the property in question. I therefore agree that the trial court's judgment dismissing the plaintiffs' action should be affirmed. I write separately, however, because I reach this conclusion by a somewhat different route from that of the majority.

I begin by emphasizing that the only defect in the public notice of the hearing on the proposed purchase of the property that is before us is that the notice was published one day short of the time period of ten days before the hearing as required by General Statutes (Rev. to 1997) § 8-44 (d). Moreover, the plaintiffs do not claim that this one day discrepancy in any way *actually* deprived them of the opportunity to attend the hearing.

I agree with the majority's analysis of the statutory scheme in that, because our municipal housing statutes do not contemplate an appeal from the action of the housing authority in deciding to purchase the property after the hearing, this scheme is very different from that established by our usual zoning and other land use statutes, which do provide for appeals by aggrieved persons. Compare, e.g., General Statutes § 8-8 (b) (providing right of appeal, with some exceptions, for "any person aggrieved by any decision of a [zoning] board . . . to the superior court"). Thus, as the majority suggests, the cases that hold that a defect in the statutorily required public notice of a land use hearing deprive the land use authority of subject matter jurisdiction; see, e.g., *Lauer* v. *Zoning Commission*, 220 Conn. 455, 461, 600 A.2d 310 (1991); see also *Jarvis Acres, Inc.* v. *Zoning Commission*, 163 Conn. 41, 44, 301 A.2d 244 (1972); do not apply to the statutory scheme in the present case. Put another way, the failure to comply strictly with the statutory notice requirement in § 8-44 did not deprive the housing authority of subject matter jurisdiction to purchase the property in question.

As a result, the plaintiffs' claim boils down to a claim of a due process violation. Because the housing authority's decision about whether to purchase the property was purely discretionary, however, the plaintiffs had no cognizable property interest therein for due process purposes. See *Kelley Property Development, Inc.* v. *Lebanon*, 226 Conn. 314, 321, 627 A.2d 909 (1993) (plaintiff had no cognizable property interest in subdivision application because zoning commission's consideration thereof was discretionary). Therefore, they had no standing to challenge it.

Nonetheless, the implication of the majority's analysis is that, despite the statutory requirement of a hearing, no nearby property owner would have standing to challenge the housing authority's decision, even if the

housing authority held *no* hearing. I am not willing to go that far.

Although, on the facts of this case, the plaintiffs were not actually harmed by the one day failure to comply with the required public notice, and only the purchase of a single home is at issue, nonetheless, the statutory notice also applies to any housing project contemplated by the housing authority. See General Statutes (Rev. to 1997) § 8-44 (d). The legislative history indicates to me that one of the purposes of the hearing, in addition to permitting the housing authority to get all relevant information, was to permit neighbors of a potential housing project to attempt to persuade the members of the housing authority not to go ahead with an intended project.[1] I would conclude, therefore, that, unlike this case, where a housing authority does not hold *any* hearing, a property owner who therefore was completely deprived of his right to persuade the housing authority at such a hearing, and who could otherwise establish harm, such as by way of evidence of a loss of value of his or her property, *might* have a protected interest for due process purposes.

---

[1] For example, as noted in footnote 9 of the majority opinion, Senator Theodore Lynch voiced the concern that neighboring property owners were not sufficiently informed of proposed housing projects prior to the enactment of § 8-44 (d). Senator Lynch stated: "This bill calls for public hearings before development commissions can change the geography of existing neighborhoods. We have found that people who have been established in a certain neighborhood have found there is a redevelopment going on which they knew nothing about before. They made an appeal to the commission and got nowhere." Conn. Joint Standing Committee Hearings, Judiciary and Governmental Functions, Pt. 2, 1957 Sess., p. 533.