## IN RE SHAWN S. ET AL.*
### (AC 21192)
### (AC 21193)

Lavery, C. J., and Landau and Peters, Js.

Argued June 5—officially released October 16, 2001

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Douglas M. Crockett*, with whom was *Anne Louise Blanchard*, for the appellant (respondents).

*Lorri A. Massa*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Opinion*

LANDAU, J. The respondent parents appeal from the judgment of the trial court committing their minor children, S and D, to the custody of the commissioner of children and families (commissioner). On appeal, the respondents claim that the commitments violate the prohibitions against (1) conditioning the provision of services on commitment as set forth in General Statutes § 17a-129,[1] (2) unwarranted state interference in family relationships as embodied in article first, §§ 1 and 10, and § 20, as amended by articles five and twenty-one of the amendments to the constitution of Connecticut, and (3) unwarranted state interference in family relationships as embodied in the ninth and fourteenth amendments to the United States constitution. The

---

[1] General Statutes § 17a-129 provides in relevant part: "There shall be no requirement for the Department of Children and Families to seek custody of any child . . . with mental illness, emotional disturbance, a behavioral disorder or developmental or physical disability if such child is voluntarily placed with the department by a parent . . . for the purpose of accessing an out-of-home placement or intensive outpatient service . . . . Commitment to or protective supervision or protection by the department shall not be a condition for receipt of services or benefits delivered or funded by the department."

commissioner challenges this court's subject matter jurisdiction, claiming that the respondents (1) have failed to exhaust their administrative remedies and (2) are not aggrieved by the order of commitment. In response, the respondents assert that resort to administrative remedies would be futile because the department of children and families (department) (1) lacks authority to revoke the commitment, (2) has failed to promulgate the necessary regulations to facilitate the voluntary services program, and (3) cannot resolve the statutory and constitutional claims raised on appeal. We dismiss the appeals because the respondents have failed to exhaust their administrative and statutory remedies.

The following facts and procedural history are relevant to the respondents' appeals. S, born in 1991, and D, born in 1987, are nonverbal, autistic brothers with developmental delays. On February 17, 1999, the commissioner filed separate petitions, pursuant to General Statutes § 46b-129, alleging that the children were neglected and uncared for because the respondents could not provide the specialized care that the children's physical, emotional or mental conditions required.[2] The respondents filed a motion for injunctive relief on July 28, 1999, requesting the court (1) to order the commissioner to provide appropriate residential placements for S and D, and (2) to enjoin the commissioner from pursuing commitment of the children.

The court heard testimony over three days, and on August 2, 1999, the respondent mother entered an unconditional plea of nolo contendere that S and D were uncared for because of their special needs.[3] The court canvassed the respondent mother to confirm that

[2] The commissioner did not pursue the allegations of neglect.

[3] The respondent mother's plea was entered pursuant to Practice Book § 33-1 (c).

she understood that the plea would operate as a waiver of her right to challenge the allegations that the children were uncared for as defined by statute. The court found that the plea was voluntarily, knowingly and intelligently made with the assistance of counsel. Although the respondent father was not present,[4] counsel indicated that he agreed with the adjudication. Accordingly, the court found that both D and S had special needs, that they were being denied the proper care and attention that they required, and that they were being permitted to live under conditions or circumstances that were injurious to their well-being.

During the period that hearings were being conducted, the department and the respondents investigated and pursued placement for S and D. At some time prior to the March 7, 2000 hearing, a placement was found at a residential facility in Pennsylvania. At the start of the March 7, 2000 hearing, the respondents marked off their motion for injunctive relief, allowing an order of commitment to be entered essentially unchallenged and allowing the children to be placed at the facility the next day. In entering the order of commitment, the court found that the department had made reasonable efforts to prevent the removal of the children. Although the respondents withdrew their motion to enjoin the commitment, their counsel made a brief statement on the record expressing his clients' unhappiness with the commitment.

The original commitment was for a period not to exceed twelve months, effective March 8, 2000.[5] On that day, the commissioner placed the children at Devereaux, a residential facility in Pennsylvania that special-

---

[4] The respondent father is on active duty in the United States Navy.

[5] Prior to the expiration of the original commitment, the commissioner, pursuant to General Statutes § 46b-129 (k), sought to extend the commitment for a second twelve month period. That motion was unopposed by the respondents and was granted by the court.

izes in the treatment of autistic children. These appeals followed.

Before we can consider the respondents' claims, we must address the commissioner's challenge to our jurisdiction. "[B]ecause the exhaustion doctrine implicates subject matter jurisdiction, we must decide as a threshold matter whether that doctrine requires dismissal of the [respondents'] claim." (Internal quotation marks omitted.) *Fish Unlimited* v. *Northeast Utilities Service Co.*, 254 Conn. 1, 12, 756 A.2d 262 (2000). Questions of subject matter jurisdiction may be raised at any time in the proceedings, either by a party or sua sponte by the court. *Daley* v. *Hartford*, 215 Conn. 14, 27–28, 574 A.2d 194, cert. denied, 498 U.S. 982, 111 S. Ct. 513, 112 L. Ed. 2d 525 (1990). "[W]henever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to [its] previous rulings." (Internal quotation marks omitted.) *Concerned Citizens of Sterling* v. *Sterling*, 204 Conn. 551, 557, 529 A.2d 666 (1987).

"It is a settled principle of administrative law that if an adequate administrative remedy exists, it must be exhausted before [a court will] obtain jurisdiction to act in the matter. . . . [W]here a statute has established a procedure to redress a particular wrong a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure." (Citations omitted; internal quotation marks omitted.) *Fish Unlimited* v. *Northeast Utilities Service Co.*, supra, 254 Conn. 11–12. Moreover, "[s]imply bringing a constitutional challenge to an agency's actions will not necessarily excuse a failure to follow an available statutory appeal process. . . . [D]irect adjudication even of constitutional claims is not warranted when the relief sought by a litigant might conceivably have been obtained through an alternative [statutory] procedure . . . which [the litigant] has chosen to ignore." (Citation

omitted; internal quotation marks omitted.) *Polymer Resources, Ltd.* v. *Keeney*, 227 Conn. 545, 563, 630 A.2d 1304 (1993).

"The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. . . . The doctrine of exhaustion furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review. . . .

"In addition, the administrative agency may be able to resolve the issues, making judicial review unnecessary. . . . [A] complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene." (Citations omitted; internal quotation marks omitted.) *Fish Unlimited* v. *Northeast Utilities Service Co.*, supra, 254 Conn. 12–13.

The respondents assert that the exhaustion doctrine is inapplicable to the present action because the relief they seek is not available through the administrative process. Specifically, they contend that any resort to administrative remedies would be futile because (1) revocation of the commitment order is not available through any administrative proceeding but only through the judicial process, (2) the department has failed to enact the regulations required to establish a voluntary services program outside of the commitment framework and (3) the department cannot resolve the constitutional claims raised by the respondents.

I

Although we agree with the respondents that the department is without the statutory authority to revoke an order of commitment unilaterally, that alone does

not dispose of the jurisdictional issue. "[W]here a statute has established a procedure to redress a particular wrong a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure." (Internal quotation marks omitted.) Id., 12.

General Statutes § 46b-129 (m) provides the procedure by which a commitment may be challenged and vests primary authority for revocation of commitment in the trial court. Section 46b-129 (m) specifically provides: "The commissioner, *a parent* or the child's attorney may file a motion to revoke a commitment, and, upon finding that cause for commitment no longer exists, and that such revocation is in the best interest and welfare of such child . . . the court may revoke the commitment . . . ." (Emphasis added.) Thus, the proper course of action for the respondents was to file motions seeking revocation. The fact that the agency may not grant, independently, the relief that the respondents seek is not a sufficient condition to preclude application of the exhaustion doctrine and to vest appellate jurisdiction at this stage of the proceedings.

Not only did the respondents fail to file a motion for a revocation of the original commitment order, they failed to oppose the commissioner's application for an extension of the commitment to a second twelve month term. The General Assembly has provided a statutory procedure by which to challenge orders of commitment. Accordingly, the respondents must avail themselves of the statutory remedy before seeking appellate review. See *Fish Unlimited* v. *Northeast Utilities Service Co.*, supra, 254 Conn. 11–12. Because the respondents have not exhausted their statutory remedy of moving to revoke the commitment pursuant to § 46b-129, this court lacks jurisdiction over the respondents' claim.

## II

We next address the respondents' second claim, specifically, that administrative action would be futile because the department has failed to enact regulations implementing its voluntary services program. An administrative remedy is futile only if the administrative agency lacks authority to grant the desired relief. Id., 14. In this case, the department has the authority to grant the respondents' requested relief of placing S and D in its voluntary services program.

Despite the respondents' conclusory allegations to the contrary, the record before us indicates that the department has promulgated regulations with respect to its voluntary services program. See Regs., Conn. State Agencies § 17a-11-1 et seq. The regulations provide a right to an administrative review of denials of admission to the program.[6] Regs., Conn. State Agencies § 17a-11-3. Although the department currently is in the process of revising and expanding its regulations concerning the program, the extant regulations remain in force. The commissioner has stated on the record that the regulations may be relied on in applying for the voluntary services program. Thus, there does not appear to be any barrier to the respondents' applying for admission to the program if the commitment were to be revoked.

To date, the respondents have made no effort to take advantage of the voluntary services program. Thus, the respondents have not exhausted their administrative remedies, and this court lacks jurisdiction over their appeals.

---

[6] The administrative review provided under the regulations is in addition to the judicial review provided for by General Statutes § 4-183. Section 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

## III

Finally, we address the respondents' concern that the department is without authority to resolve the statutory and constitutional questions raised on appeal.

"Simply bringing a constitutional challenge to an agency's actions will not necessarily excuse a failure to follow an available statutory appeal process." *LaCroix* v. *Board of Education*, 199 Conn. 70, 79, 505 A.2d 1233 (1986), citing *Sullivan* v. *State*, 189 Conn. 550, 554, 457 A.2d 304 (1983). Our Supreme Court has allowed such collateral challenges under certain special circumstances that operated to excuse the challenger's failure to comply with the statutory process. *LaCroix* v. *Board of Education*, supra, 80. Such appeals, however, have been allowed only where the challenger has not deliberately decided to bypass the statutory appeal route. *Connecticut Light & Power Co.* v. *Norwalk*, 179 Conn. 111, 117, 425 A.2d 576 (1979).

In the case before us, the respondents concede that they have made no attempt to avail themselves of the appropriate statutory and administrative remedies. Rather, they have deliberately chosen to bypass both the statutory procedures for vacating commitments to the department and the agency's own regulations regarding voluntary placement. Further, they have not shown that exercising those options would be futile, thereby excusing their dereliction. See parts I and II of this opinion. In light of the respondents' failure to exhaust their statutory and administrative remedies, it would be premature for us consider their constitutional claims.

We conclude that because the respondents have failed to exhaust the administrative and statutory remedies available to them, we lack the requisite subject matter jurisdiction to entertain their appeals.

The appeals are dismissed.

In this opinion the other judges concurred.