******************************************************************

The ''officially released'' date that appears near the beginning of this opinion is the date the opinion was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

This opinion is subject to revisions and editorial changes, not of a substantive nature, and corrections of a technical nature prior to publication in the Connecticut Law Journal.

******************************************************************

Bright, C. J., and Prescott and Suarez, Js.

*Syllabus*

The respondent mother appealed to this court from the trial court's order
requiring her to participate in a psychological evaluation, issued in the
same memorandum of decision with its judgment denying her motion
to revoke the commitment of her minor child to the custody and care
of the petitioner, the Commissioner of Children and Families. The mother
claimed the order was a part of the judgment denying her motion to
revoke commitment, alleging that the order, inter alia, violated her right
to remain silent in neglect proceedings. *Held* that this court lacked
jurisdiction over the respondent mother's appeal, as the order from
which the mother appealed was not a final judgment: the trial court's
order for a psychological examination was not a part of the court's
judgment denying the motion to revoke commitment, as the court's
denial of the motion to revoke commitment was not based on its decision
to order the psychological examination; moreover, the trial court's order
for a psychological examination was not immediately appealable as it
did not satisfy either of the prongs of the test set forth in *State* v. *Curcio*
(191 Conn. 27) that govern when an interlocutory order is appealable,
as the order was an integral part of the ongoing proceedings involving
the mother and her child following the uncared for petition brought by
the petitioner in that the results of the evaluation could affect the ulti-
mate outcome of a later adjudication of the mother's parental rights,
and, thus, the resolution of the issue did not constitute a separate
and distinct proceeding; furthermore, no presently existing right of the
mother had been concluded by the court's order to undergo a psychologi-
cal evaluation, as the order did not risk irreparable harm to the mother's
custody or visitation rights or to the parent-child relationship, and the
order did not directly infringe on or threaten irreparable harm to the
mother's right to remain silent or rule on the admissibility of any state-
ment made by her, and, accordingly, the appeal was dismissed.

Argued October 8, 2020—officially released February 2, 2021**

*Procedural History*

Petition by the Commissioner of Children and Fami-
lies to adjudicate the respondents' minor child uncared
for, brought to the Superior Court in the judicial district
of New Haven, Juvenile Matters, where the court, *Con-
way, J.*, adjudicated the child uncared for and ordered
protective supervision with custody vested in the
respondent mother; thereafter, the court, *Conway, J.*,
extended the period of protective supervision and sus-
tained an order of temporary custody vesting custody
of the minor child with the respondent father; subse-
quently, the court, *Hon. Richard E. Burke*, judge trial
referee, vacated the order of temporary custody and
ordered shared custody and guardianship of the child
between the respondent parents with primary physical
custody vesting in the respondent father; thereafter,
the court, *Hon. Richard E. Burke*, judge trial referee,
sustained an order of temporary custody vesting cus-
tody of the minor child in the petitioner; subsequently,
the court, *Hon. Richard E. Burke*, judge trial referee,
granted the motion filed by the petitioner to open and
modify the dispositive order of protective supervision,

and committed the child to the custody of the petitioner; thereafter, the court, *Conway, J.*, denied the respondent mother's motion to revoke commitment, and the respondent mother appealed to this court. *Appeal dismissed.*

*Albert J. Oneto IV*, assigned counsel, for the appellant (respondent mother).

*Seon Bagot*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Benjamin Zivyon* and *Evan O'Roark*, assistant attorneys general, for the appellee (petitioner).

*Opinion*

SUAREZ, J. The respondent mother, Monica C.,[1] appeals from the trial court's order requiring her to participate in a psychological evaluation. The court ordered the evaluation immediately after it denied the respondent's motion to revoke commitment with respect to her minor child, Marcquan C.[2] The respondent does not challenge on appeal the judgment denying her motion to revoke commitment. Her appeal is limited to her claim that the court abused its discretion by compelling her to participate in the psychological evaluation. We do not reach the respondent's claim because we agree with the petitioner, the Commissioner of Children and Families, that the order for a psychological evaluation was not part of the court's judgment denying the respondent's motion to revoke commitment and is not otherwise an appealable final judgment.[3] Accordingly, we dismiss the appeal.

The following facts, which are either undisputed or were found by the court, and procedural history are relevant to this appeal. On January 13, 2017, the petitioner filed a neglect petition alleging that Marcquan was being neglected. On May 16, 2017, Marcquan was adjudicated uncared for and the court, *Conway, J.*, ordered that he remain in the care and custody of the respondent under protective supervision for a period of six months.[4] Subsequently, the order was extended for an additional six months.

On February 5, 2018, Marcquan appeared in school with a swollen eye and lines resembling belt marks on his temple. The respondent admitted disciplining him on his buttocks with a belt and theorized that she may have inadvertently struck him on the head. On February 7, 2018, the court, *Conway, J.*, vested temporary custody of Marcquan with his father. On April 11, 2018, by agreement of the parties, the court, *Hon. Richard E. Burke*, judge trial referee, ordered that the order of temporary custody be vacated and that the father and the respondent share custody and guardianship of Marcquan, with the father having primary physical residence. Protective supervision remained in place until August 11, 2018.

On July 10, 2018, at an in-court review hearing, the father reported that he could no longer care for Marcquan and, on July 12, 2018, the court vested temporary care and custody of the child with the petitioner. On July 27, 2018, the court granted the petitioner's motion to modify the order of protective supervision and committed Marcquan to the care and custody of the petitioner. Since that time, he has remained committed to the petitioner. Marcquan was placed in nonrelative foster care until September, 2019, when he was placed with his godmother.

On September 30, 2019, the respondent filed a motion

to revoke commitment.[5] On October 19, 2019, the petitioner filed a motion for a psychological evaluation of Marcquan and the respondent. On October 29, 2019, the court, *Conway, J.*, held a hearing on the petitioner's motion for a psychological evaluation and, expressing its belief that the requested order would be futile, denied the motion on the ground that "[the respondent] refuses to cooperate."

On November 25 and December 18, 2019, the court, *Conway, J.*, held a hearing on the respondent's motion to revoke commitment. On December 26, 2019, the court issued a memorandum of decision wherein it found the following facts. The permanency plan for Marcquan was reunification with the respondent.[6] To that end, the respondent and Marcquan were working with R'kids, a reunification service provider, from May to August, 2019, to provide a safe transition of Marcquan from out of home care to the respondent. R'kids identified three goals for the respondent. First, she was to consistently participate and exhibit progress in her mental health treatment. Second, she was to engage in appropriate conversations with Marcquan during visits. Specifically, the "respondent . . . [was] to gain a better understanding of her son's mental health/cognitive capabilities as it relates to engagement in age appropriate conversations; for [her] to have age appropriate expectations of Marcquan, and for [her] to gain a better understanding of her son's needs and challenges and for her to learn effective, age appropriate ways to assist her son in managing his behaviors." Third, she was to acquire skills and knowledge regarding positive and effective forms of discipline.

The court found that, in September, 2019, R'kids recommended to the petitioner that Marcquan not return to the respondent's care. It found that, although the respondent participated in supervised visits with her son, she continued to make inappropriate comments and engaged in inappropriate conversations in Marcquan's presence. Moreover, she failed to develop skills or a working knowledge of positive and effective forms of discipline.

The court also found that the respondent participated in weekly individual therapy with a licensed professional counselor at the Shoreline Wellness Clinic for approximately two years. The respondent made improvements in managing her anxiety and using coping skills. On the basis of its subordinate findings of fact, the court concluded, however, that there had not been any discernable improvement in her ability to conform her behavior so as to make it in Marcquan's best interest to reunify with the respondent. The court expressly found that the benefits the respondent derived from her therapy sessions did not assist her in her reunification effort with her son and her ability to properly care for him. The court found that the respon-

dent's therapist did not offer any insight as to her emotional and mental makeup and was unable to identify appropriate interventions or services that could constructively advance the reunification process.

The court concluded that "absent a credible psychological evaluation, it is impossible to understand or to predict how [the respondent] will react to and with others, including Marcquan. The past and present reality has stalled Marcquan's return to her care and has undoubtedly negatively impacted Marcquan's fragile well-being." As a result of these findings, the court determined that grounds for commitment continued to exist and denied the motion to revoke. The permanency plan remained reunification of Marcquan with the respondent.[7]

After observing that it lacked a credible psychological evaluation of the respondent, the court also reconsidered its October 29, 2019 denial of the petitioner's motion for a psychological evaluation and ordered the respondent to participate in one. The court stated in relevant part: "[From the denial of] her motion to revoke today, the respondent . . . has to understand that until she demonstrates an ability to collaboratively and effectively interact with [the Department of Children and Families] and services providers and she demonstrates a sustained ability to parent Marcquan in a manner which affords him both physical and emotional safety, reunification is highly unlikely. While no guarantee, her participation in a court-ordered evaluation and her sustained and effective follow-through with treatment recommendations may potentially be the key to a reinvigorated reunification process." This appeal followed.[8]

In the respondent's principal brief, she contends that the court improperly issued the order to participate in a psychological evaluation, sua sponte, because the court's earlier ruling denying the petitioner's motion for a psychological evaluation was res judicata, the motion was not before the court at the time of the order, and the order violated her right to remain silent. Reiterating in substance the arguments that she advanced in her motion to dismiss the appeal; see footnote 8 of this opinion; the petitioner responds that the court's order for a psychological evaluation is not an immediately appealable final judgment, and, therefore, this court does not have jurisdiction over this appeal. The respondent did not file a reply brief, so we are left to consider the jurisdictional analysis that she set forth in her opposition to the petitioner's motion to dismiss the appeal.

We begin our analysis by considering the jurisdictional issue raised by the petitioner and the standard of review that applies to the issue. "The lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. A determination regarding . . . subject matter jurisdiction is a question

of law [over which we exercise plenary review]. . . . The appellate courts have a duty to dismiss, even on [their] own initiative, any appeal that [they lack] jurisdiction to hear." (Citation omitted; internal quotation marks omitted.) *State* v. *Jamar D.*, 300 Conn. 764, 770, 18 A.3d 582 (2011).

"The right of appeal is purely statutory. It is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met." *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983). "Because our jurisdiction over appeals, both criminal and civil, is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim." Id.

We first consider, as the respondent argued in her opposition to the petitioner's motion to dismiss the appeal, whether the order for a psychological examination, from which the respondent appeals was a part of the court's judgment denying the respondent's motion to revoke commitment, from which she had a right of appeal. See, e.g., *In re Shawn S.*, 262 Conn. 155, 167, 810 A.2d 799 (2002) (acknowledging right to appeal from denial of motion to revoke commitment); *In re Zoey H.*, 183 Conn. App. 327, 330, 192 A.3d 522 (appeal from denial of motion to revoke commitment), cert. denied, 330 Conn. 906, 192 A.3d 425 (2018).

As an initial observation, the respondent's assertion that the order for a psychological evaluation was merely a part of the judgment denying her motion to revoke commitment is somewhat belied by the fact that, on her appeal form in the present appeal, she did not state that she was appealing from the judgment denying the motion to revoke commitment. Instead, she characterized "the action that constitutes the appealable final judgment or decision" as "[a] *postjudgment order* compelling psychological evaluation." (Emphasis added.)

As this court has observed, "[t]he construction of a judgment is a question of law for the court. . . . To determine the meaning of a judgment, we must ascertain the intent of the court from the language used and, if necessary, the surrounding circumstances." (Citations omitted; internal quotation marks omitted.) *Ottiano* v. *Shetucket Plumbing Supply Co.*, 61 Conn. App. 648, 652, 767 A.2d 128 (2001). A review of the court's memorandum of decision and the surrounding circumstances leads us to conclude that the judgment denying the respondent's motion to revoke commitment was separate from the court's order for a psychological evaluation.

As we have explained, after the respondent brought her motion to revoke commitment, the petitioner sought an order for a psychological evaluation. Prior to the hearing on the motion to revoke commitment, the

court denied the motion for a psychological evaluation. The court denied the motion to revoke commitment on its merits, and the court's memorandum of decision encompassed its findings and conclusions of law with respect to the motion to revoke commitment. In addition to denying the motion to revoke commitment, it sua sponte revisited its prior ruling denying the petitioner's motion for a psychological evaluation.

The court's ruling on the motion to revoke commitment and its ruling to order a psychological evaluation are addressed in the same memorandum of decision, but this fact is not dispositive of whether the rulings should be viewed as a single, immediately appealable judgment. In setting forth its rationale for denying the motion to revoke commitment, the court observed that it did not have before it a credible psychological evaluation of the respondent, but it did not suggest that its denial of the motion to revoke commitment was based on its decision to order a psychological evaluation. To the contrary, undoubtedly mindful of the fact that a final decision concerning the care and custody of Marcquan in this ongoing child protection matter will be made in future proceedings, it expressly characterized its order for a psychological examination as potentially benefitting the *future prospect of reunification* following its denial of the motion to revoke commitment. The court aptly recognized that its order was merely a tool in the process that began with the petitioner's uncared for petition and that an ultimate decision regarding reunification was yet to be made. In this regard, the court explained its order in relevant part: "While no guarantee, [the respondent's] participation in a court-ordered evaluation and her sustained and effective follow-through with treatment recommendations may potentially be the key to a reinvigorated reunification process." Indeed, there is no basis on which to conclude that the order for a psychological evaluation affected the court's ruling to deny the motion to revoke commitment. Accordingly, we are not persuaded that, for appeal purposes, the order from which the respondent appeals was part of the court's judgment denying the motion to revoke commitment.[9]

We next address the respondent's alternative argument that, even if the order to undergo a psychological evaluation is interlocutory in nature, it nonetheless is immediately appealable. Our Supreme Court has recognized that certain otherwise interlocutory orders may be final judgments for purposes of an appeal, and the court may deem an interlocutory order or ruling to have the attributes of a final judgment if the ruling or order falls within either of the two prongs of the test set forth in *Curcio*. "Under *Curcio*, interlocutory orders are immediately appealable if the order or ruling (1) terminates a separate and distinct proceeding, or (2) so concludes the rights of the parties that further proceedings cannot affect them." (Internal quotations

marks omitted.) *State* v. *Jamar D.*, supra, 300 Conn. 771.

"The first prong of the *Curcio* test . . . requires that the order being appealed from be severable from the central cause of action so that the main action can proceed independent of the ancillary proceeding. . . . If the interlocutory ruling is merely a step along the road to final judgment then it does not satisfy the first prong of *Curcio*. . . . It must appear that the interlocutory ruling will not impact directly on any aspect of the [action]." (Internal quotation marks omitted.) *Abreu* v. *Leone*, 291 Conn. 332, 339, 968 A.2d 385 (2009).

We conclude that, unlike the court's denial of the respondent's motion to revoke commitment, the order for psychological evaluation did not terminate a separate and distinct proceeding. Rather, contrary to her assertion that the order was not made "in connection with any pending matter before the court," the order is an integral part of the ongoing proceedings involving the respondent and Marcquan following the uncared for petition brought by the petitioner. See General Statutes § 46b-129 (i).[10] As the respondent seems to have recognized in her opposition to the motion to dismiss; see footnote 8 of this opinion; the results of the evaluation may affect the ultimate outcome of a later adjudication of her parental rights. It is not in dispute that, at the time that the court issued its order, Marcquan was adjudicated uncared for. He remains committed to the petitioner, and the court has an ongoing statutory obligation to ascertain whether the petitioner's permanency plan for Marcquan is in his best interest. See General Statutes § 46b-129 (k). Stated otherwise, the order is not severable from the central cause of action involving the respondent and Marcquan and whether reunification is possible but is merely a step along the road to a final judgment in that action. Accordingly, we conclude that the order does not satisfy the first prong of the *Curcio* test.

Likewise, we conclude that the order does not satisfy the second prong of the *Curcio* test. "[F]or an interlocutory ruling in either a criminal or a civil case to be immediately appealable under the second prong of *Curcio*, certain conditions must be present. There must be (1) a colorable claim, that is, one that is superficially well founded but that may ultimately be deemed invalid, (2) to a right that has both legal and practical value, (3) that is presently held by virtue of a statute or the state or federal constitution, (4) that is not dependent on the exercise of judicial discretion and (5) that would be irretrievably lost, causing irreparable harm to the [appellant] without immediate appellate review." *Sharon Motor Lodge, Inc.* v. *Tai*, 82 Conn. App. 148, 158–59, 842 A.2d 1140, cert. denied, 269 Conn. 908, 852 A.2d 738 (2004). "The second prong of the *Curcio* test focuses on the nature of the rights involved. It requires the parties seeking to appeal to establish that the trial

court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [parties] irreparably harmed unless they may immediately appeal. . . . One must make at least a colorable claim that some recognized statutory or constitutional right is at risk." (Internal quotation marks omitted.) *State* v. *Jamar D.*, supra, 300 Conn. 771.

Guided by several relevant appellate decisions that pertain to rulings in family matters, we are not persuaded that the court's order is immediately appealable under *Curcio* on the ground that it risks irreparable harm to the respondent's custody or visitation rights. Relying on the second prong of *Curcio*, our Supreme Court in *Madigan* v. *Madigan*, 224 Conn. 749, 754–55, 620 A.2d 1276 (1993), concluded that a temporary order of custody is a final judgment for purpose of an immediate appeal "because a parent's custodial rights during the course of dissolution proceedings cannot otherwise be vindicated at any time, in any forum." The court, considering the nature of the right to be vindicated in such an appeal, observed that temporary custody orders fall within the narrow class of otherwise interlocutory orders that are immediately appealable under *Curcio* because they "affect the irreplaceable time and relationship shared between parent and child." Id., 755. The court in *Madigan* also reasoned: "[A] temporary custody order may have a significant impact on a subsequent permanent custody decision. Especially if both parents would be suitable custodians, an order of temporary custody may establish a foundation for a stable long-term relationship that becomes an important factor in determining what final custodial arrangements are in the best interests of the child. . . . Accordingly, not only is any impropriety in granting an initial order for temporary custody not subsequently reversible, but it may also have an adverse spillover effect on the ultimate determination of custody." (Citations omitted.) Id., 756–57. It has long been recognized that orders extending the commitment of children to the petitioner also satisfy the second prong of *Curcio*. In *In re Todd G.*, 49 Conn. App. 361, 364–65, 713 A.2d 1286 (1998), this court, relying on *Madigan*, held that a trial court's granting of an extension of commitment of a minor child to the petitioner pursuant to General Statutes § 46b-129 (e) is a final judgment for purposes of bringing an immediate appeal. In determining that the order extending the child's commitment, which was dispositional in nature, was immediately appealable, this court stated: "The parent-child relationship in the present case would be . . . disrupted for a significant period of time if no appeal were possible. There are no further proceedings in the underlying action brought pursuant to § 46b-129 (d) that will affect the commitment order until the petitioner either moves to extend the commitment again or to terminate the respondent's parental

rights." (Footnote omitted.) Id.

We also note that, in *Taff* v. *Bettcher*, 243 Conn. 380, 387, 703 A.2d 759 (1997), our Supreme Court, relying on *Madigan*, held that an order of the trial court which barred the parties for one year from seeking review on the issues of custody and visitation was an immediately appealable final judgment. The court's rationale further illustrates the principles expressed in *Madigan*: "The considerations that informed our decision in *Madigan* apply equally to the facts of this case. Just as a temporary custody order may have a significant impact on a subsequent permanent custody decision, a court order barring the parties for one year from seeking review on the issues of custody and visitation may interfere with a parent's custodial rights over a significant period in a manner that cannot be redressed at a later time. A lost opportunity to spend significant time with one's child is not recoverable. . . . Any chance by the noncustodial parent to restructure custody and visitation to enhance the relationship or further establish a foundation in that interval cannot be replaced by a subsequent modification one year later. Nor can any harm to the child caused by the custodial arrangement be meaningfully addressed one year after it occurs. We are persuaded that, as in the case of a temporary order of custody, an immediate appeal of the court order in this case is the only reasonable method of ensuring that the important rights surrounding the parent-child relationship are adequately protected." (Citation omitted; internal quotation marks omitted.) Id., 386–87.

In the present case, the respondent does not raise a claim related to the court's denial of her motion to revoke commitment or to any other type of order that interferes, for any length of time, with custody or visitation rights. The order for a psychological evaluation is not dispositional in nature, and it does not affect the irreplaceable time and relationship that exists between a parent and a child. Nor does it risk establishing a relationship between a child and another suitable custodian that may impact a subsequent decision concerning custody rights.

In her opposition to the petitioner's motion to dismiss, the respondent asserted that an immediate appeal was necessary to avoid irreparable harm to "her right to remain silent in neglect proceedings under General Statutes § 46b-137." Section 46b-137 (d) provides in relevant part: "Any confession, admission or statement, written or oral, made by the parent or parents or guardian of the child or youth after the filing of a petition alleging such child or youth to be neglected, uncared for or abused shall be inadmissible in any proceeding held upon such petition against the person making such admission or statement unless such person shall have been advised of the person's right to retain counsel, and that if the person is unable to afford counsel, coun-

sel will be appointed to represent the person, that the person has a right to refuse to make any statement and that any statements the person makes may be introduced in evidence against the person . . . ."[11]

In an effort to obtain immediate review of the order, the respondent relies on her right to remain silent, which is safeguarded by the advisement of rights mandated by § 46b-137. We observe that the court's order, which required her to submit to a psychological evaluation, did not directly infringe on or threaten irreparable harm to her right to remain silent or rule on the admissibility of any statement made by her. The order did not address her right to remain silent.

Beyond bringing the present appeal, the respondent has not taken any action with respect to complying with the order, let alone asserted her right to remain silent instead of complying with the order. It is possible that she may refuse to comply with the order and as a result be found in contempt, at which time she may bring an immediate appeal. See *Khan* v. *Hillyer*, 306 Conn. 205, 216, 49 A.3d 996 (2012) ("a contempt order is considered final for appellate purposes when the order so substantially resolves the rights and duties of the parties that further proceedings relating *to the judgment of contempt* cannot affect them" (emphasis in original; internal quotation marks omitted)). Alternatively, the court, at a future proceeding, might enter an appealable judgment against the respondent based on an adverse inference drawn from her failure to participate in the psychological evaluation. In such a circumstance, the respondent would be able to challenge the judgment on the basis that the order for a psychological evaluation was improper.

It is also possible that the respondent could choose to attend the psychological evaluation but refuse to answer some or all of the questions asked of her based on her right to remain silent. Although under that circumstance it is unlikely that the court would hold the respondent in contempt for exercising a constitutional and statutory right, to the extent the court issued a judgment adverse to the respondent based on her exercise of that right, the respondent could challenge on appeal that judgment and the propriety of the court's psychological evaluation order.

It is also a possibility that the respondent may comply with the order for a psychological evaluation. Doing so may benefit her with respect to her efforts to be reunited with Marcquan, be detrimental with respect to those efforts, or have no effect on those efforts. The respondent will have an opportunity to challenge the propriety of the order in the event that there is a final judgment adverse to her that results from the use, if any, of the evidence obtained as a result of the order. What all of these potential scenarios demonstrate is that the respondent's rights are far from being finally resolved.[12]

Although the hearing on the respondent's motion to revoke commitment has come to an end, the court's involvement in the ongoing child protective case involving Marcquan and the respondent is continuing. "The policy concerns underlying the final judgment rule are to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level." (Internal quotation marks omitted.) *Pritchard* v. *Pritchard*, 281 Conn. 262, 270, 914 A.2d 1025 (2007). To permit an appeal at this juncture would interfere with the speedy and orderly disposition of that ongoing case and encourage piecemeal appeals. If the psychological evaluation required by the order yields evidence that is used by the court in a final judgment from which the respondent appeals, or if the respondent's refusal to participate fully in the psychological evaluation results in an adverse judgment, a reviewing court will have an opportunity to evaluate the propriety of the order at that time, when it may fully apprehend its import following a trial. Thus, in the absence of an immediate right to appeal, the respondent's right to challenge the order has not been irretrievably lost.

The type of order at issue in the present case merely is an intermediate step along the road to facilitate reunification, if possible, and provides a factual predicate for future custody determinations. The order at issue does not threaten irrevocable harm to the parent-child relationship or to the rights of the respondent. In light of the foregoing, we are persuaded that the order from which the respondent appeals is not part of the judgment denying her motion to revoke commitment. It is an interlocutory order that is not an immediately appealable final judgment under either prong of the *Curcio* test. Thus, we dismiss the appeal and do not consider the merits of the respondent's claim that the court abused its discretion in ordering the psychological evaluation. See, e.g., *State* v. *Jamar D.*, supra, 300 Conn. 770.

The appeal is dismissed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection on to persons having a proper interest therein and upon order of the Appellate Court.

** February 2, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The mother is referred to herein as the respondent. The father, Mark B., although also a respondent in the underlying proceedings, is not a party to this appeal and for convenience is referred to herein as the father.

[2] The attorney for the minor child has filed a statement, pursuant to Practice Book §§ 67-13 and 79a-6 (c), adopting the brief of the Commissioner of Children and Families.

[3] The respondent also claims that, as part of its order requiring her to participate in a psychological evaluation, the court abused its discretion by ordering that confidential records related to her past treatment with a counselor be disclosed to the court-appointed evaluator. The respondent argues that the court failed to make a necessary finding pursuant to General Statutes § 52-146s that the records should be disclosed and that, even if such

a finding was made by the court, the evidence did not support such finding.

For the same reasons that we conclude in this opinion that the appeal from the court's order for a psychological evaluation is not an immediately appealable interlocutory order, we likewise conclude that we lack jurisdiction over this claim, which, according to the respondent, is a component of the order for a psychological evaluation. As the respondent acknowledges in her appellate brief, however, the record, including the court's December 26, 2019 memorandum of decision, wherein it denied the respondent's motion to revoke commitment and ordered her to participate in a psychological evaluation, does not reflect that the court made any ruling concerning the disclosure of her counseling records. Accordingly, even if we did have jurisdiction to review this claim, the lack of an order leaves us with no ruling to review.

[4] On May 16, 2017, the neglect petition was orally amended to allege that Marcquan was uncared for.

[5] Motions to revoke commitment are governed by General Statutes § 46b-129 (m), which provides in relevant part: "The commissioner, a parent or the child's attorney may file a motion to revoke a commitment, and, upon finding that cause for commitment no longer exists, and that such revocation is in the best interests of such child . . . the court may revoke the commitment of such child . . . . No such motion shall be filed more often than once every six months."

Practice Book § 35a-14A provides in relevant part: "Where a child or youth is committed to the custody of the Commissioner . . . the commissioner, a parent or the child's attorney may file a motion seeking revocation of commitment. The judicial authority may revoke commitment if a cause for commitment no longer exists and it is in the best interests of the child . . . . Whether to revoke the commitment is a dispositional question, based on the prior adjudication, and the judicial authority shall determine whether to revoke the commitment upon a fair preponderance of the evidence. The party seeking revocation of commitment has the burden of proof that no cause for commitment exists. If the burden is met, the party opposing the revocation has the burden of proof that revocation would not be in the best interests of the child. If a motion for revocation is denied, a new motion shall not be filed by the movant until at least six months have elapsed from the date of the filing of the prior motion unless waived by the judicial authority."

[6] General Statutes § 46b-129 (k) (1) (A) requires that nine months after a child is placed in the care and custody of the petitioner, the petitioner must file a permanency plan and the court must have a hearing on such permanency plan. Section 46b-129 (k) (2) provides that such permanency plan may include the goal of (1) revocation of commitment and reunification of the child with the parent, (2) transfer of guardianship to a third person, (3) termination of parental rights and adoption, or (4) a plan for a permanent living arrangement.

[7] At the revocation hearing, Marcquan's attorney represented that Marcquan's desire was to go home to the respondent, but that he wanted and needed her to work on her issues while he remained in foster care with his godmother.

[8] Prior to the time of oral argument, the petitioner filed a motion to dismiss the appeal for lack of an appealable final judgment. The petitioner argued that the order for a psychological evaluation was not part of the court's judgment denying the respondent's motion to revoke commitment, which order, as we explain in this opinion, is a final judgment from which she properly may have appealed. Viewing the order for a psychological evaluation as an interlocutory ruling, the petitioner argued that the order was not appealable under the test set forth in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). See id. ("[a]n otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them"). With respect to the first prong of *Curcio*, the petitioner argued that, unlike the court's denial of the respondent's motion to revoke, the order for a psychological evaluation did not terminate a separate and distinct proceeding. With respect to the second prong of *Curcio*, the petitioner argued that the respondent was unable to demonstrate that the order risked irreparable harm to her. Accordingly, the petitioner argued that the appeal should be dismissed.

In the respondent's objection to the motion to dismiss, she argued that, contrary to the petitioner's characterization of the order, it was not interlocu-

tory in nature, but "part of a final judgment from which [she] was entitled to appeal under General Statutes § 51-197a." She also argued that the denial of her motion to revoke commitment concluded all matters that were pending before the court and that the order for a psychological evaluation was made merely "in anticipation of hypothetical future proceedings that had not yet been initiated." Thus, the respondent argued, the court was without authority to order the evaluation.

The respondent also argued that, if the order was interlocutory in nature, the order was immediately appealable under *Curcio* in that the order "directed [her] to speak to a court-appointed psychologist in violation of her right to remain silent in neglect proceedings under General Statutes § 46b-137 . . . ." She also argued that the order "authorized the petitioner to obtain from [her] licensed professional counselor statutorily privileged information within the counselor's control in violation of General Statutes § 52-146s." The respondent argued that she was without the ability to prevent the disclosure of the counseling records because they were in the control of her counselor and that "[t]he only judicial recourse available to [her] in protecting the privileged information . . . was by immediate appeal to this court."

On July 22, 2020, this court denied the petitioner's motion to dismiss the appeal "without prejudice to the petitioner addressing in her appellee's brief on the merits, and the [respondent] addressing in her reply brief, the question [of] whether there is an appealable final judgment in this matter."

[9] In her opposition to the petitioner's motion to dismiss the present appeal, the respondent heavily relied on this court's decision in *Savage* v. *Savage*, 25 Conn. App. 693, 596 A.2d 23 (1991), for the proposition that the order for a psychological evaluation was not interlocutory but part of the judgment of the trial court denying the motion to revoke commitment. *Savage* involved an appeal in a dissolution action. The plaintiff wife appealed from the judgment dissolving her marriage to her former husband, the defendant, as well as from postjudgment orders. Id., 694. The respondent in the present case focuses on the plaintiff's claim in *Savage* that the trial court abused its discretion in ordering, as part of its judgment, that the parties and their minor children engage in postjudgment consultation with a child expert. Id., 698. This court agreed with the plaintiff that the order was improper and reasoned: "The trial court's order here compelling consultation with [the child expert] for two years into the future is not a proper custody order but rather is an attempt to force consultation for purposes of a postjudgment evaluation. There is no statutory authorization for such an evaluation without a pending motion or matter before a court." Id., 701.

The respondent's reliance on *Savage* is misplaced. In *Savage*, this court did not expressly address an issue concerning this court's subject matter jurisdiction or whether the plaintiff had appealed from a final judgment. More importantly, *Savage* was an appeal from a judgment of dissolution and postdissoluton orders, not a child protection matter. The judgment rendered by the trial court in *Savage* disposed of pending matters between the parties until such time as one or both parties brought before the court a new postjudgment motion. The procedural posture of the court's order in the present case is materially distinguishable from that at issue in *Savage*. Judicial involvement in the present child protection matter will be ongoing until such time as reunification between the respondent and Marcquan has been achieved, the court has terminated the respondent's parental rights with respect to Marcquan, or the court has made some other final determination regarding his custody and placement.

[10] General Statutes § 46b-129 (i) authorizes the court to order a psychological evaluation when a neglect or uncared petition is filed in said court. It provides in relevant part: "When a petition is filed in said court for the commitment of a child . . . the Commissioner of Children and Families shall make a thorough investigation of the case and shall cause to be made a thorough physical and mental examination of the child or youth if requested by the court. The court after hearing may also order a thorough physical or mental examination, or both, of a parent or guardian whose competency or ability to care for a child or youth before the court is at issue. . . ." General Statutes § 46b-129 (i).

Practice Book § 34a-21 (a) provides: "The judicial authority, after hearing on a motion for a court-ordered evaluation or after an agreement had been reached to conduct such an evaluation, may order a mental or physical examination of a child or youth. The judicial authority after hearing or after an agreement has been reached may also order a thorough physical or mental examination of a parent or guardian whose competency or ability

to care for a child or youth is at issue."

[11] As we stated previously; see footnote 8 of this opinion; the respondent also argued that an immediate appeal was necessary so that she could protect statutorily protected counseling records that were in the custody of her counselor. She argued that, as part of its order for a psychological evaluation, the court had authorized the petitioner to obtain these records from her counselor. As we determined previously in this opinion, however, the record does not reflect that the court ordered such disclosure. See footnote 3 of this opinion. Accordingly, this aspect of the respondent's argument is unavailing because it is based on an inaccurate interpretation of the court's order.

[12] The respondent does not dispute that Marcquan remains committed to the petitioner following the filing of an uncared for petition. In claiming that a presently held right is at risk for purposes of the issue before us, she has focused on her right to remain silent but has not argued that she has a presently held statutorily or constitutionally protected right to not undergo a psychological evaluation.

———————————————————